**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-81553-CIV-ALTONAGA/McAliley**

**LUKNER BLANC**,

      Movant,

v.

**UNITED STATES OF AMERICA**,

      Respondent.

_____/

**ORDER**

On November 13, 2018, Movant, Lukner Blanc, filed a Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. [Section] 2255 [ECF No. 1] and an accompanying Memorandum of Law in Support [ECF No. 1-1], raising eight ineffective-assistance-of-counsel claims.  On October 31, 2019, Magistrate Judge Chris McAliley[1] entered a Report [ECF No. 18] recommending the Court deny the Motion.  In a December 17, 2019 Order [ECF No. 22], the Court affirmed the Report in part and returned the matter to Judge McAliley for an evidentiary hearing on one of Movant's claims.  (*See id.* 18).

Thereafter, the parties submitted additional memoranda of law (*see* [ECF Nos. 31, 32]), and an evidentiary hearing was held (*see* [ECF No. 34]).  Judge McAliley subsequently entered a Second Report [ECF No. 45] recommending Movant's remaining claim be denied.  Movant filed Objections [ECF No. 46] to the Second Report, and the Government filed a Response to [Movant's] Objections [ECF No. 48].  The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

---

[1] The Court referred the case to Judge McAliley for a report and recommendation. (*See* Order of Reference [ECF No. 17]).

## I.   BACKGROUND

### A. Movant's Trial and Appeal

On April 8, 2015, a jury found Movant guilty of all charges.  (*See* Second Report 2).

Richard Serafini served as Movant's counsel at trial.  (*See id.*).

At *voir dire*, a prospective juror, Shelia Harvey Lawrence, indicated she might know

Movant.  (*See id.* 3–4).  Harvey Lawrence engaged in the following colloquy with the trial court:

JUROR TWENTY: . . . I'm not sure if I know one of the defendants.  The name I
know but not the face, so.

THE COURT: One of the defendants in the case or one of the witnesses?

JUROR TWENTY: The defendant.

THE COURT: And who is it you think you might know?  Mr. Blanc?

JUROR TWENTY: Mr. Le Blanc.  I'm thinking I know the name.

THE COURT: It's not Le Blanc, though.  It's just B-L-A-N-C.

JUROR TWENTY: Okay.  I think I may know him, not personally, but from where
I was from previously.

THE COURT: All right.

JUROR TWENTY: Growing up with the kids and all.

THE COURT: Where was it that you grew up, ma'am?

JUROR TWENTY: In Belle Glade.

THE COURT: Out in Belle Glade?

JUROR TWENTY: Yes.

THE COURT: Okay.  Can I ask you, would that in any way, do you think, affect
your ability to evaluate the evidence in this kind of case?

JUROR TWENTY: No.  No, it wouldn't. . . .

(Mar. 23, 2015 Trial Tr. [CR ECF No. 284] 54:25–56:7 (alterations added)).[2]  After discussing other potential issues with the trial judge, Harvey Lawrence asserted "I accept the law as explained. I do believe in the jury system.  I can be impartial.  And there's nothing else I would like to mention."  (*Id.* 57:6–8).  Harvey Lawrence also stated she had "three grown children" in response to a questionnaire given by the trial court.  (Second Report 4; *see also id.* 3 n.3).

Movant did not recognize Harvey Lawrence during *voir dire* or trial.  (*See id.* 5).  Several days after the trial ended, a friend who had attended the trial, Franchette Mila, told Movant that Harvey Lawrence "knew him under unfavorable circumstances."  (*Id.*).

On July 23, 2015, Movant advised the trial judge he felt Serafini was ineffective and requested he be replaced.  (*See id.* 2).  The judge substituted Richard Rosenbaum as counsel, who represented Movant at sentencing and on appeal.  (*See id.*).  The Eleventh Circuit affirmed Movant's conviction and sentence on direct appeal.  (*See id.*).

**B.  Movant's Section 2255 Motion and the Evidentiary Hearing**

Movant timely filed his section 2255 Motion on November 13, 2018, raising eight grounds for relief predicated on ineffective assistance of counsel.  (*See generally* Mot.).  In Ground Five (discussed as the fourth claim in Movant's Memorandum of Law and the Court's December 17, 2019 Order), Movant asserts he "was denied his right to effective counsel when counsel failed to investigate allegations surrounding a biased juror that ultimately sat as a juror in [Movant's] trial."  (*Id.* 11 (alteration added; capitalization omitted)).[3]  Movant states he told "trial counsel" the information related by Ms. Mila, but counsel "did not alert the [c]ourt about the issue or move for

---

[2] References to docket entries in Movant's criminal case, Case No. 14-80114-ALTONAGA, are denoted by "CR ECF No."

[3] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

a new trial." (Mem. 21 (alteration added)).  Movant asserts "[h]ad any action been taken, the outcome of the proceeding would have been different." (*Id.* (alteration added)).

As noted, the Court denied all but this claim and returned the matter to Judge McAliley for an evidentiary hearing. (*See* Dec. 17, 2019 Order 18).  Movant, Harvey Lawrence, Franchette Mila, Jean Claude Mila, and Serafini testified at the hearing. (*See* Second Report 6; *see generally* Hr'g Tr. [ECF No. 44]).  The Court recounts the relevant testimony.

### 1. *Movant's Testimony*

Before jury selection, Movant, who grew up in Belle Glade, told Serafini he did not want anybody from Belle Glade on the jury because he expected people from Belle Glade to be "biased against [him]." (Hr'g Tr. 11:10–18 (alteration added)).  Movant described Belle Glade as "a little, small town where everybody know[s] everybody." (*Id.* 11:21–22 (alteration added)).  In Belle Glade, Movant was known as "Luke." (*Id.* 30:20–25).

Although Harvey Lawrence recognized Movant's name at *voir dire*, Movant did not identify her at the time she was selected. (*See id.* 12:4–7, 13:15–17).  Movant did not insist Harvey Lawrence be stricken when she stated she was from Belle Glade because she said she lived in Wellington. (*See id.* 42:1–11).  On the last day of trial, Ms. Mila, who is married to Movant's friend, came to observe the trial and "recognized [] Harvey Lawrence as the mother of Edward Shine — someone [Movant] described as his enemy[.]" (Second Report 7 (alterations added); *see also* Hr'g Tr. 13:25–15:9).  Ms. Mila related this information to Serafini and Movant. (*See* Hr'g Tr. 15:10–12).

At the evidentiary hearing, Movant described the ways he was familiar with Harvey Lawrence.  When he was "19, 20, [or] 21" years old, Movant "work[ed] with [Harvey Lawrence's] husband" (*id.* 25:21–26:11 (alterations added)), "who ran a crew that picked corn" (Second Report

8).   "[D]uring that time [Movant] encountered [] Harvey Lawrence, who did paperwork for her husband."   (*Id.* (alterations added); *see also* Hr'g Tr. 25:24–26:1).

Movant testified he had "negative issues" with Shine.   (Hr'g Tr. 16:21–23).   Movant explained "when he lived in Belle Glade there were rivalries, including shootings, between the Haitian and 'American' communities in Belle Glade."   (Second Report 7; *see also* Hr'g Tr. 23:13–24:1).   Movant and his friend, Jean Claude Mila, were in the "Haitian section[;]" and Shine was in the "American section."   (Hr'g Tr. 23:15–19 (alteration added)).   Movant described two incidents involving threatened and actual shootings where Movant called the police on Shine.   (*See id.* 21:18–23:4).   Additionally, Mr. Mila "was tried on charges of shooting Shine, and [Movant] attended that trial.   Shine evidently became upset when he saw [Movant] in the audience, and [Movant] had to leave the courtroom."   (Second Report 7 (alterations added); *see also* Hr'g Tr. 24:8–25:3).

Finally, Movant described an incident that occurred when he was around 20 years old involving Sandy Joseph, a young woman who lived across the street from Harvey Lawrence, and Lisa Davis, Harvey Lawrence's niece who was living with her at the time.   (*See* Hr'g Tr. 26:12–29:15).   Movant and his friend picked up Joseph and Davis from school.   (*See id.* 27:13–28:10).   While they were stopped at a red light, Harvey Lawrence's husband pulled up behind them in his truck, "walked to the car[,] and angrily opened the door, and [Movant], who was seated in the front passenger seat, got out and ran, chased by [Harvey Lawrence's husband]."   (Second Report 8 (alterations added); *see also* Hr'g Tr. 28:18–29:1).   Joseph "later called [Movant] to say that at the insistence of [] Harvey Lawrence, she and [Davis] were at the hospital, evidently to determine

whether [Joseph and Movant] had had sex, and that [] Harvey Lawrence had called the police to the hospital."[4]  (Second Report 8 (alterations added); *see also* Hr'g Tr. 29:2–6, 40:7–9).

### 2. *Franchette Mila's Testimony*

Ms. Mila is friends with Movant and has known him for over 20 years.  (*See* Hr'g Tr. 86:15–21).  According to Ms. Mila, Shine's "issues" with Movant and Ms. Mila's husband, Jean Claude Mila, were "[v]ery well known" in Belle Glade.  (*Id.* 87:19–23 (alteration added).  "Ms. Mila confirmed that she attended [Movant's] trial and [] recognized one of the jurors as [] Shine's mom, which she thought would present a conflict of interest."  (Second Report 12 (alterations added); *see also* Hr'g Tr. 88:9–19).

### 3. *Jean Claude Mila's Testimony*

Mr. Mila went to high school with Movant in Belle Glade and "described [Movant] as his best friend."  (Second Report 12 (alteration added); *see also* Hr'g Tr. 93:11–20).  Mr. Mila also went to high school with Shine and stated he and Shine are "number one enemies."  (Hr'g Tr. 94:5–6).  Mr. Mila confirmed there were "issues" between Movant and Shine.  (*Id.* 95:23–24, 98:13–15).  Mr. Mila also stated he was "charged with first degree attempted murder on [] Shine," and that Movant attended Mr. Mila's trial and "was asked to leave."  (*Id.* 94:23–24, 95:20 (alteration added)).

### 4. *Harvey Lawrence's Testimony*

Harvey Lawrence used to live in Belle Glade and moved to Wellington about ten years ago.  (*See* Hr'g Tr. 49:7–17).  Her husband was a farmworker.  (*See id.* 54:13–14).  In Belle Glade, Harvey Lawrence did not know Movant personally but "remembered [Movant's] name as someone

---

[4] Serafini testified he spoke with Joseph, and she confirmed much of Movant's account of this incident. (*See* Hr'g Tr. 114:4–9).  Although Joseph initially indicated she would be willing to sign an affidavit to that effect, she ultimately did not do so.  (*See id.* 114:19–23, 115:8–14).

who worked with her sons in the corn fields, and when she told [the trial judge] that she might know him, it was in that context[.]" (Second Report 14 (alterations added); *see also* Hr'g Tr. 62:7–13). She did not know for sure if Movant worked on the same crew as her husband or with a different crew leader. (*See* Hr'g Tr. 63:2–9). At one time she worked as a bookkeeper for her husband, but not during the time Movant was working in the fields. (*See id.* 66:18–20).

When asked at the hearing how many children she has, Harvey Lawrence answered "[b]iological, I have four." (*Id.* 50:7–9 (alteration added)). She has also been the legal guardian of other children. (*See id.* 50:13–14). One of those children was Shine, who stayed with her from the time he was 10 years old to when he was 16 or 17. (*See id.* 51:18–25). She also helped raise some of her nieces and nephews, including Davis. (*See id.* 51:13–15, 52:11–12).

Harvey Lawrence testified she was "separate[] [] from the . . . in-crowd" of Belle Glade because she had children. (*Id.* 53:25–54:3 (alterations added)). She generally "was not aware of violence when she lived in Belle Glade" and "thought that any rivalry between the Haitian and American communities must have happened after she left Belle Glade." (Second Report 16; *see also* Hr'g Tr. 55:8–11, 68:8–14).

Harvey Lawrence "has not had much contact with Shine since he moved out, although he has stopped by very occasionally to say hello." (Second Report 14; *see also* Hr'g Tr. 55:19–24). She testified she was "not aware" of what was going on in Shine's life. (Hr'g Tr. 56:14–15). She heard "Shine went to trial on criminal charges, and she heard that he had been shot in the foot or leg, although she did not know the details about either event." (Second Report 14; *see also* Hr'g Tr. 56:19–57:6, 57:15–58:1, 69:19–70:2). She did not know there was friction between Movant and Shine until counsel in this matter brought it to her attention. (*See* Hr'g Tr. 83:7–8).

7

Harvey Lawrence testified Davis "was friends with a girl who lived across the street named Sandy Joseph." (Second Report 14; *see also* Hr'g Tr. 60:13–22). Harvey Lawrence recalled an incident where Davis "was in the car with some boys." (Hr'g Tr. 59:18). She "remember[ed] being in a car, possibly with her husband, and that one of the boys got out and ran[,] but she denied that her husband ran after that boy." (Second Report 14 (alterations added); *see also* Hr'g Tr. 60:2–12). She did not remember taking Davis to the hospital or filing a police report after this incident. (*See* Hr'g Tr. 60:23–61:6). She recalled "one of the boys was named Luke, although there was another Haitian male in Belle Glade with that name." (Second Report 14; *see also* Hr'g Tr. 61:9–14).

When Harvey Lawrence was called to jury duty in 2015, she did not want to serve because she was caring for her mother, who has dementia. (*See* Hr'g Tr. 64:15–65:24). Nevertheless, she was "told [] [she] had to serve anyway[,]" and she accepted that she "was doing [her] duty as a citizen to serve[.]" (*Id.* 65:1–2 (alterations added)).

"When asked how she recognized [Movant] at the time of [*voir dire*] [Harvey Lawrence] said '. . . I want to say — I kind of knew his face. I knew his face. The name — not the last — just Luke. I knew the face with Luke.'" (Second Report 15 (first three alterations added); *see also* Hr'g Tr. 67:5–7). On cross-examination, the Government asked Harvey Lawrence whether she was lying or made a mistake when she told the trial judge she knew Movant's name but not his face. (*See* Hr'g Tr. 79:3–8). Harvey Lawrence stated she made a mistake and does not remember "a lot of things" because she "come[s] across a lot of kids" in her job as an educator. (*Id.* 79:9–13 (alteration added)).

Harvey Lawrence was also asked what she meant by her *voir dire* testimony that she knew Movant from "growing up with the kids and all[,]" and she stated she knew Movant because he

worked with "the boys" in the fields.  (*Id.* 67:16–22 (alteration added)).  When asked why she did

not mention the other children she cared for in answering the trial court's question about how many

children she has, Harvey Lawrence "explained that she thought the question was directed at her

biological children[.]"  (Second Report 15–16 (alteration added); *see also* Hr'g Tr. 69:2 ("I was

just thinking about biological kids.")).  She testified that when she is asked about how many

children she has, she generally "say[s] four, but [she] say[s] [she] raised a lot more."  (Hr'g Tr.

69:11–14 (alterations added)).  Yet, she stated she did not think to say she "raised a lot more" at

*voir dire* because "they asked about [her] kids and normally it's, you know, your kids."  (*Id.* 83:13–

16).

According to Harvey Lawrence, none of the issues regarding Movant's interactions with

Shine or the incident involving Davis and Joseph occurred to her when she was being questioned

at *voir dire*.  (*See id.* 77:20–78:3).  Indeed, she "did not associate [Movant] with the incident

[involving] [Davis] and [] Joseph" and "thought that incident might have involved the other Luke

who lived in Belle Glade."  (Second Report 17 (alterations added); *see also* Hr'g Tr. 78:10–15).

She confirmed she would have told the trial judge if she had known of the problems between

Movant and Shine.  (*See* Hr'g Tr. 82:16–24).  "At no point during the trial did [] Harvey Lawrence

realize that she knew [Movant] beyond what she told the [c]ourt."  (Second Report 15 (alterations

added); *see also* Hr'g Tr. 72:23–73:1).

"Harvey Lawrence believes she was a fair juror[,]" and "[i]n fact, she was the only juror

who held out on finding [Movant] guilty on the conspiracy charge; other jurors had to persuade

her of his guilt."  (Second Report 17 (alterations added); *see also* Hr'g Tr. 75:17–77:6).  She

confirmed she answered the trial judge's questions honestly and did not hold any bias against

Movant.  (*See* Hr'g Tr. 78:20–79:2).

9

CASE NO. 18-81553-CIV-ALTONAGA/McAliley

## II.     STANDARD OF REVIEW

When a magistrate judge's "disposition" has been properly objected to, district courts must review the disposition *de novo*.  Fed. R. Civ. P. 72(b)(3).  In reviewing the disposition *de novo*, a district court may "adopt the credibility findings made by a magistrate judge without conducting a new hearing before making a final determination."  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007).  Nevertheless, "[w]hen objections are made to findings which the magistrate judge made based upon the testimony of witnesses," the district court is required "to review the transcript or listen to the tape-recording of those proceedings."  *Willis v. United States*, 346 F. App'x 404, 406 (11th Cir. 2009) (internal quotation marks and citation omitted).

## III.     DISCUSSION

To prove a claim of ineffective assistance of counsel, a habeas petitioner must satisfy two prongs: deficient performance, that is, his counsel's representation fell below an objective standard of reasonableness; and prejudice, that but for the deficiency in representation, there is a reasonable probability the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Review of counsel's performance is highly deferential.  *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (citation omitted).  "There is a strong presumption that counsel's performance was reasonable and adequate. . . .  To overcome that presumption, a [movant] must establish that no competent counsel would have taken the action that his counsel did take."  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (alterations added; internal quotation marks and citations omitted).

The Second Report recommends the Court deny Movant's fourth claim alleging ineffective assistance arising from counsel's failure to move for a new trial because of the allegedly biased

juror.[5]  (*See* Second Report 29; *see also* Mem. 21).  The Second Report concludes Movant has

failed to satisfy *Strickland*'s prejudice requirement because the standard for a new trial due to juror

falsehood was not met, as the evidence does not show Harvey Lawrence failed to answer honestly

a material question during *voir dire* or that she harbored actual bias against Movant.  (*See* Second

Report 19–20, 27).  Movant objects to the finding the standard for a new trial was not met and the

conclusion that he failed to demonstrate unconstitutionally ineffective assistance of counsel.  (*See*

Objs. 2–10).

### A.  Whether Movant Would Have Met the Standard for a New Trial

To obtain a new trial after a juror gave an inaccurate response to a *voir dire* question, a

party must demonstrate (1) the juror failed to answer honestly a material question during *voir dire*,

and (2) a correct response would have provided a valid basis for a challenge for cause.  *See*

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  "The first prong of the

*McDonough* test requires a determination of whether the juror's answers were honest, 'that is,

whether he was aware of the fact that his answers were false.'"  *BankAtlantic v. Blythe Eastman*

*Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992) (quoting *United States v. Perkins*, 748

F.2d 1519, 1531 (11th Cir. 1984)).  The second prong "requires the court to assess whether the

withheld information establishes or suggests 'a showing of bias that would disqualify the juror.'"

*Waldrop v. Thomas*, No. 3:08-cv-515, 2014 WL 1328138, at *91 (M.D. Ala. Mar. 31, 2014), *aff'd*

*sub nom. Waldrop v. Comm'r, Ala. Dep't of Corr.*, 711 F. App'x 900 (11th Cir. 2017) (quoting

---

[5] The Second Report notes, as an initial matter, that Movant did not specify in his Motion which trial counsel purportedly was ineffective (*see* Second Report 2–3), while Movant asserts the record is clear he was referring to both Serafini and Rosenbaum (*see* Objs. 1–2).  This distinction is immaterial to the Court's analysis and conclusion, which rest on Movant's failure to satisfy *Strickland*'s prejudice prong.  Regardless of whether Serafini or Rosenbaum was ineffective in failing to investigate Harvey Lawrence's purported bias and move for a new trial, Movant would not have met the standard for a new trial and therefore there is no reasonable probability the result of the proceeding would have been different.

*United States v. Ervin*, 517 F. App'x 734, 743 (11th Cir. 2013)).  In other words, the court must determine whether "the juror in question exhibited actual bias" because of "either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (citation omitted).

### 1. *Harvey Lawrence did not fail to answer honestly a material question.*

As to the first prong, the Second Report concludes Harvey Lawrence gave truthful answers during *voir dire* and did not omit material information.  (*See* Second Report 20–24).  As stated, the Court must determine "whether [Harvey Lawrence's] answers were honest, 'that is, whether [s]he was aware of the fact that [her] answers were false.'"  *BankAtlantic*, 955 F.2d at 1473 (alterations added; quoting *Perkins*, 748 F.2d at 1531).  Put differently, the inquiry is whether Harvey Lawrence "deliberately failed to disclose relevant information to the court."  *United States v. Tutt*, 704 F.2d 1567, 1569 (11th Cir. 1983).

Movant makes several objections to the Magistrate Judge's findings.  The Court addresses each objection in turn.

*First*, the Magistrate Judge concludes the inconsistency between Harvey Lawrence's *voir dire* statement "the name I know but not the face" and her testimony at the evidentiary hearing that she "knew [Movant's] face" does not demonstrate she was dishonest, reasoning that the material issue was that Harvey Lawrence "might know the defendant" and not whether she recognized his name or his face.  (Second Report 22 (alteration added; emphasis and internal quotation marks omitted)).  Movant objects to this finding, stating "how [Harvey Lawrence] recognize[d] him is [] material" because if she had testified "she 'knew his face' and recognized him as 'Luke'" at *voir dire*, "it would have changed the way voir dire panned out."  (Objs. 3 (alterations added)).

CASE NO. 18-81553-CIV-ALTONAGA/McAliley

Having reviewed the hearing transcript, the Court agrees with Judge McAliley's determination that Harvey Lawrence's statement at *voir dire* was not dishonest.  Harvey Lawrence credibly explained she made a mistake, stating "a lot of things I don't remember[;] I come across a lot of kids."  (Hr'g Tr. 79:9–13 (alteration added)).  As the Government observes, "[t]here is absolutely no evidence in this record that [] Harvey Lawrence lied during *voir dire* when she stated that she believed she knew Movant because of his name."  (Resp. to Objs. 7 (alterations added)).

***Second***, Harvey Lawrence testified at *voir dire* "she thought she knew [Movant] from 'growing up with the kids and all[,]'" and at the evidentiary hearing she explained "that she associated [Movant] as one of the 'kids' who worked in the fields along with her sons."  (Second Report 22 (alterations added; emphasis omitted)).  The Magistrate Judge found this explanation "credible."  (*Id.*).  Movant objects to the finding "Harvey Lawrence's testimony at the evidentiary hearing was consistent with her answer at voir dire" because she "minimized how she 'may' know [Movant]" by omitting the fact that Movant possibly worked with her family members in the fields.  (Objs. 4 (alteration added)).  Movant also states "[i]n light of the fact that [] Harvey Lawrence recognized [Movant] from growing up with the 'kids' and all, it was material that she failed to correct the number of 'kids' she had previously claimed."  (*Id.* (alterations added)).

The Magistrate Judge correctly concludes Harvey Lawrence's hearing testimony elaborating on how she knew Movant was consistent with her answer at *voir dire* that she knew him "from 'growing up with the kids and all[.]'"  (Second Report 22 (alteration added; emphasis omitted)).  Furthermore, as the Government points out, Movant does not "explain how [] Harvey Lawrence's separate *voir dire* response regarding the number of children she had relates to her response regarding how she believed she knew Movant."  (Resp. to Objs. 9 (alteration added)).  Movant fails to demonstrate these were deliberate omissions by Harvey Lawrence.

13

*Third*, the Magistrate Judge concludes "Harvey Lawrence's statement to [the trial judge] 'I do believe in the jury system. I can be impartial' was consistent with her testimony in [Judge McAliley's] courtroom." (Second Report 23 (alterations added)). The Magistrate Judge finds Harvey Lawrence "credibly conveyed a strong sense of fairness, open-mindedness and civic duty[,]" relying in part on her assertion she was doing her duty as a citizen by serving on the jury even though she did not want to do so because she was caring for her mother. (*Id.* (alteration added)). Movant objects to the finding "Harvey Lawrence's strong sense of fairness and civic duty plays any role in the current analysis." (Objs. 4 (alteration added)). Movant also disagrees "Harvey Lawrence was credible because she was selected for the jury even though she did not want to serve because she was caring for her mother," since "Harvey Lawrence never brought up the issues with her mother at the time of the trial." (*Id.* 5).

The Court agrees with Judge McAliley's conclusion that Harvey Lawrence's *voir dire* statement regarding her ability to be impartial was truthful. Contrary to Movant's assertion, Harvey Lawrence's sense of fairness and civic duty played a role in the Magistrate Judge's credibility determination at the evidentiary hearing. Movant fails to explain why Harvey Lawrence's omission of the fact she was caring for her mother casts doubt on the truthfulness of her affirmations of impartiality at *voir dire*. Indeed, Harvey Lawrence testified she raised this issue "with the jury pool coordinator, who nevertheless advised her that she needed to report." (Resp. to Objs. 14; *see also* Hr'g Tr. 64:24–65:2).

*Fourth*, the Magistrate Judge states Harvey Lawrence did not "tell the [c]ourt that . . . her foster son, Edward Shine, and [Movant] were enemies[] and shot at each other." (Second Report 24 (alterations added)). The Second Report notes these events "took place after [] Harvey Lawrence moved to Wellington and well after Edward Shine had left her home," and it credits

Harvey Lawrence's explanation for not knowing the details of Shine's relationship with Movant: "Shine did not maintain a close relationship with her once he left her home, and specifically, he did not tell her about his alleged unlawful conduct[,]" and "she did not make it her business to know all of what was happening in Belle Glade, even when she did live there." (*Id.* 24–25 (alterations added)).

Movant objects to the finding Harvey Lawrence did not know that Shine and Movant "had negative issues and were enemies at the time of [Movant's] trial." (Objs. 5 (alteration added)). Movant points out Harvey Lawrence was aware that Shine was charged with and tried for attempted murder and had been shot, and he asserts "[t]o find that [] Harvey Lawrence knew about these events, but chose not to familiarize herself with the circumstances around them (that involved [Movant]), is not reasonable." (*Id.* (alterations added)).

The Court disagrees, as a review of the hearing transcript demonstrates Harvey Lawrence had a reasonable explanation for being unfamiliar with the details of the events involving Movant and Shine. The Magistrate Judge correctly concludes "it is credible that [Harvey Lawrence] paid little attention to the events that were important to [Movant]" because Harvey Lawrence did not keep in close contact with Shine and did not keep up with the happenings in Belle Glade. (Second Report 25 (alterations added)). Thus, there is no indication Harvey Lawrence's failure to disclose these facts at *voir dire* was deliberate since she did not appear to be familiar with them.

***Fifth***, the Magistrate Judge finds "Harvey Lawrence credibly testified" she had some recollection of the 2002 incident involving Davis and Joseph, but "[n]ot surprisingly, she did not recall it in the way that [Movant] did and certainly not in the detail that he did." (*Id.* 25 (alterations added)). The Second Report notes that although Joseph "did largely corroborate [Movant's]

memory when Serafini spoke with her, it seems she avoided committing those recollections to a sworn declaration." (*Id.* (alteration added)).

Movant objects to the finding "Harvey Lawrence did not recognize [Movant] and link him with the 2002 incident" as well as to "any finding that simply because [Joseph] did not commit her testimony to a sworn declaration, that her testimony is any less credible." (Objs. 6 (alterations added)). Movant asserts he and Serafini both "testified about what [Joseph] knew — and both of their testimon[ies] w[ere] consistent." (*Id.* (alterations added)).

The Court agrees with the Magistrate Judge's conclusion that Harvey Lawrence did not deliberately omit information about the incident involving Davis and Joseph because she credibly testified she had a limited recollection of what happened. Regarding Joseph's recollection, the Government correctly notes "there is no 'testimony' as [] Joseph refused . . . Serafini's[] request to fill out an affidavit." (Resp. to Objs. 11 (alterations added)). In any event, Movant does not explain why Judge McAliley's finding that Harvey Lawrence did not recall details about the incident should be rejected, even if Movant and Joseph remembered the incident differently.[6]

**Sixth**, the Magistrate Judge finds "[t]here is no evidence that supports [Movant's] assumption that [] Harvey Lawrence deliberately deceived the [c]ourt" by failing to disclose she had fostered Davis and Shine, which "would have alerted [Movant] that she was aware of his

---

[6] Movant also states the Magistrate Judge did not consider the fact Serafini was replaced by Rosenbaum and asserts "[t]he obligations to continue communicating with [Joseph] would have fallen on [] Rosenbaum upon his appointment." (Objs. 6 (alterations added)). To the extent Movant intends to assert Rosenbaum was ineffective in failing to follow up with Joseph, Movant does not elaborate on this point and the Court declines to consider it. *See, e.g.*, *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." (alteration added)); *Quinones-Correa v. Wells*, No. cv 311-050, 2012 WL 2872878, at *1 (S.D. Ga. July 12, 2012) (refusing to consider new material in objections to magistrate judge's report because allowing the petitioner "to inject new contentions and allegations upon receiving an unfavorable analysis from the [m]agistrate [j]udge . . . would frustrate systematic efficiencies" (alterations added; internal quotation marks and citations omitted)).

16

objectionable behavior." (Second Report 25–26 (alterations added)). The Second Report credits Harvey Lawrence's explanation "she assumed the [c]ourt's inquiry about her children was directed to her biological children[.]" (*Id.* (alterations added)).

Movant objects to this finding. (*See* Objs. 6–7). According to Movant, Harvey Lawrence's testimony at the evidentiary hearing that she "normally answers the question about how many children she has by saying she has four children[] but has raised a lot more" reveals she "deliberately deceived" the trial court when she failed to disclose her foster children during *voir dire*. (*Id.* 6–7 (alteration added; emphasis omitted)). Movant asserts the finding that Harvey Lawrence's nondisclosure of her foster children "is 'quite reasonable' . . . is not supported by the record." (*Id.* 7 (alteration added)).

The Magistrate Judge correctly concludes there is no evidence Harvey Lawrence deliberately deceived the trial court by failing to disclose her non-biological children. Although Harvey Lawrence generally says she has four children but has "raised a lot more" (Hr'g Tr. 69:11–14), the Court agrees Harvey Lawrence gave a credible explanation that at *voir dire* she thought she was being asked about her biological children. Tellingly, as the Government points out, when Movant's counsel asked Harvey Lawrence how many children she had at the evidentiary hearing, Harvey Lawrence responded with reference to her biological children only. (*See* Resp. to Objs. 10; *see also* Hr'g Tr. 50:7–9 ("Biological, I have four.")).

\* \* \*

In sum, the undersigned has reviewed the transcript of the evidentiary hearing and agrees with Judge McAliley's determination Harvey Lawrence's testimony was credible. Movant points to no evidence showing Harvey Lawrence "deliberately failed to disclose relevant information to the court," *Tutt*, 704 F.2d at 1569, or that "[s]he was aware of the fact that [her] answers were

CASE NO. 18-81553-CIV-ALTONAGA/McAliley

false," *BankAtlantic*, 955 F.2d at 1473 (alterations added; internal quotation marks and citation omitted). Therefore, Movant's objections fail to persuade, and the Court concludes Harvey Lawrence did not deliberately give dishonest answers or conceal material information at *voir dire*.

### 2. *A correct response would not have provided a valid basis for a cause challenge.*

As to the second prong, the Magistrate Judge concludes Movant fails to show Harvey Lawrence was biased against him. (*See* Second Report. 26–27). Movant objects to this finding "because it is irrelevant and unnecessary for the Court's analysis. (Objs. 7 (alterations added)). Movant takes issue with the Second Report's focus "on whether [] Harvey Lawrence was actually biased as a juror against [Movant]," asserting "that is not the appropriate test or standard that this Court should use when rendering its ultimate decision" and "[u]nder the *McDonough* test, the 'bias' prong requires the Court to determine whether a correct response by [] Harvey Lawrence would have provided a valid basis for a challenge for cause." (*Id.* 7–8 (alterations added; emphasis omitted)).

The *McDonough* test's "second prong, that a correct response would have provided a valid basis for a challenge for cause, requires a showing of actual bias." *United States v. Valencia-Trujillo*, 380 F. App'x 936, 937 (11th Cir. 2010) (citations omitted). Although Movant contends the actual-bias inquiry is irrelevant, his own citations belie this contention. (*See* Objs. 8 ("The second part of the *McDonough* test requires proof of actual bias." (quoting *New v. Darnell*, 409 F. App'x 281, 283 (11th Cir. 2011)))). Therefore, the Magistrate Judge correctly focuses her analysis on whether Harvey Lawrence was biased against Movant. (*See* Second Report 26–27).

The Court agrees with the conclusion Harvey Lawrence was not biased. As stated, "[b]ias may be shown either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Carpa*, 271

18

F.3d 962, 967 (11th Cir. 2001) (alteration added; citation omitted). A party "is required to demonstrate an actual, identifiable prejudice on the part of the juror." *Tutt*, 704 F.2d at 1569 (citation omitted). Movant contends if Harvey Lawrence had revealed she had foster children, "it would have become clear" Shine was one of her foster children, which would have been "sufficient for a cause challenge." (Objs. 8).

Even assuming Harvey Lawrence's relationship with Shine would have been revealed at *voir dire*,[7] this fact would not have provided a valid basis for a cause challenge, as it does not "demonstrat[e] such a close connection to th[is] [] case that bias must be presumed." *Chandler*, 996 F.2d at 1102 (alterations added; citation omitted); *see also United States v. Khoury*, 901 F.2d 948, 956 n.1 (11th Cir. 1990) (rejecting as "meritless" the contention that "the jury was tainted by contact between a juror and a friend of one of the defendants" because "[t]he contact was minimal and irrelevant to the case" and "[t]he trial judge properly interviewed each of the jurors individually and was assured that each juror would be fair and impartial" (alterations added)); *United States v. Dunn*, No. 7:09-cr-6, 2010 WL 11519631, at *3 (M.D. Ga. May 7, 2010) (finding no presumption of bias based on juror's friendship — which he described as "not particularly close" — with the family of one of the victims of the charged crimes).

Moreover, Harvey Lawrence made no express admission of bias. Rather, she testified at *voir dire* that she "c[ould] be impartial" after telling the trial court that she recognized Movant. (Mar. 23, 2015 Trial Tr. 57:7 (alteration added)). Harvey Lawrence also confirmed at the evidentiary hearing that she would have told the trial judge if she had known of the problems between Movant and Shine. (*See* Hr'g Tr. 82:16–24). These assertions preclude a finding Harvey

---

[7] The Government aptly notes "[t]his is an illogical leap unsupported by the record" (Resp. to Objs. 15 (alteration added)), as referencing her foster children at *voir dire* would not have necessarily revealed Harvey Lawrence's relationship with Shine.

Lawrence was biased against Movant. *See Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 833 (11th Cir. 2014) (finding juror's corrective statements indicating he was capable of being impartial after initially stating he would have sympathy for the victim did not give rise to a presumption of actual bias); *Dunn*, 2010 WL 11519631, at *4 ("[A]ny circumstantial facts that [the] [d]efendant might use to argue against Juror 7's impartiality and for actual bias are outweighed by Juror 7's immediate candor with the [c]ourt upon the realization of the relationship with [the victim] and [the victim's] parents and by Juror 7's repeated assurances of impartiality." (alterations added)).

### B.  Whether Movant Satisfies the *Strickland* Standard

Movant "objects to the recommendation that he failed to establish the prejudice element of *Strickland*" (Objs. 9), but he does not explain why.[8]  Because Movant would not have met the standard for a new trial due to juror falsehood, the Magistrate Judge Report is correct that he also fails to satisfy *Strickland*'s prejudice requirement.  *See Ingram v. Sec'y, Fla. Dep't of Corr.*, 736 F. App'x 798, 802 (11th Cir. 2018) ("Applying the *Strickland* test, however, we conclude [the petitioner] cannot show prejudice.  That is, he cannot show he would have been entitled to a new trial if his counsel had filed a motion [for a new trial]." (alteration added; citation omitted)); *Butcher v. United States*, 368 F.3d 1290, 1300 (11th Cir. 2004) (finding the petitioners failed to demonstrate prejudice from their counsels' failure to file motions for a new trial because there was

---

[8] The Magistrate Judge also finds Movant did not show his counsel's performance fell below an objective standard of reasonableness, although noting this analysis is "not necessary" to her conclusion.  (Second Report 27).  Movant "objects to all recommendations that surround the performance aspect of the *Strickland* test[,]" contending Rosenbaum should have been called to testify at the evidentiary hearing.  (Objs. 9 (alteration added)).  The Court does not discuss *Strickland*'s deficient-performance prong because it "need not address the issue of counsel's effectiveness if prejudice is lacking."  *Fair v. United States*, 144 F. App'x 858, 860 n.3 (11th Cir. 2005) (citing *Strickland*, 466 U.S. at 697; other citation omitted).

CASE NO. 18-81553-CIV-ALTONAGA/McAliley

no reasonable probability that the court of appeals would have affirmed a grant of the motions).

## IV.   CONCLUSION

The undersigned has reviewed *de novo* the Second Report, the record, and applicable law. Considering that review, the undersigned agrees with the Second Report's analysis and recommendation.

Accordingly, it is **ORDERED AND ADJUDGED** that the Second Report **[ECF No. 45]** is **ACCEPTED AND ADOPTED** as follows:

1.  Movant, Lukner Blanc's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. [Section] 2255 **[ECF No. 1]** is **DENIED** as to Movant's fourth claim.

2.  The Clerk of the Court is directed to **CLOSE** this case, and all pending motions are **DENIED** as moot.

3.  Judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 19th day of June, 2020.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record;
        Magistrate Judge Chris McAliley